UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ALAN D. CHASTAIN, JR.                          )
    *Plaintiff,*                              )
                                   )
    *vs.*                                     )      1:09-cv-01182-JMS-DML
                                     )
INDIANA BELL TELEPHONE CO., INC. d/b/a          )
AT&T                                           )
    *Defendant.*                              )

## ORDER

Plaintiff Alan Chastain claims that his former employer, Defendant Indiana Bell Telephone Co., Inc. doing business as AT&T's ("IBT"), interfered with his leave rights under the Family and Medical Leave Act of 1993 ("FMLA"), or that it should be estopped from asserting that he had exhausted his leave. Presently before the Court is IBT's Motion for Summary Judgment. [Dkt. 33.]

### I.

#### BACKGROUND

Mr. Chastain worked as a service representative for IBT from March 2004 to September 2009. [Dkt. 34 at 3.][1] He was paid an hourly rate for five days of work per week. [*Id.*] Mr. Chastain was primarily responsible for fielding inbound customer telephone calls. [*Id.* at 3.]

As an IBT employee, Mr. Chastain was a member of the union, so his employment was governed by the terms and conditions of a collective bargaining agreement ("CBA") between IBT and the Union. [*Id.* at 4.] The CBA outlines policies and procedures pertaining to employee absences, personal illness, FMLA leave, and disability leave. [*Id.*] The CBA also contains the

---

[1] Mr. Chastain explicitly accepts IBT's recitation of the facts, [dkt. 39 at 2], so the Court will cite thereto.

standard by which the Company disciplines, suspends, and terminates employees. [*Id.* at 5.] Additionally, the CBA sets out policies and procedures for problem resolution, which include a Union-Management Review Board Meeting, a grievance procedure, and an arbitration procedure. [*Id.*]

Compliance with IBT's Code of Business Conduct ("COBC") is a condition of employment for all employees at IBT. [*Id.* at 5.] The COBC specifies that employees can be disciplined and discharged, even for a first offense. [*Id.*] The COBC likewise outlines employer responsibilities; specifically the COBC requires that records "must be accurate and reliable, no matter what form those records take." [Dkt. 35-16 at 37.]

IBT provides eligible employees leave time under the FMLA as required by federal law. [Dkt. 34 at 18.] Pursuant to the FMLA, an IBT employee becomes "eligible" when he or she has worked with IBT at least 1250 hours in the preceding 12-month period prior to the leave request. [Dkt. 34 at 7.]

IBT determines the amount of leave time to which an FMLA-eligible employee is entitled, based on a physician recommendation. [*Id.* at 5.] When an employee requests leave, IBT notifies the employee by letter ("F-1 form") as to whether his FMLA leave is approved or denied, and as to the amount of leave time to which he or she is entitled. [*Id.*] IBT also sends every employee who requests or uses FMLA leave time an F-1 form documenting his or her remaining leave time. [*Id.*]

IBT uses a system called E-Link to track employee attendance, including sick time, vacation time, FMLA time, and disability time. [*Id.* at 8.] When E-Link was initially being implemented, IBT instructed its employees to use the new system to verify their FMLA leave time. [Dkt. 35-16 at 23-24.] However, IBT also "specifically instructed employees to verify the accu-

racy of their leave eligibility and entitlement through additional sources, including checking IBT's FMLA website, contacting the attendance manager who tracks both pending and approved absence time, and reviewing F-1 forms." [Dkt. 34 at 8.] FMLA-eligible employees considering taking leave received specific instructions to call their respective supervisors at least an hour before their shift starts, "in case a supervisor need[s] to call the employee back to clarify any of the information related to the leave request." [*Id.* at 7.]

During his employment at IBT, Mr. Chastain suffered from debilitating migraines. [*Id.* at 7.] Mr. Chastain's symptoms when suffering from migraines included extreme sensitivity to light and nausea. [*Id.*] Pursuant to the FMLA, once Mr. Chastain became eligible, IBT provided him with 12 weeks of FMLA leave. [*Id.*]

Mr. Chastain consistently – even daily – tracked his FMLA eligibility on E-Link, [*id.* at 7], to determine how many how many FMLA hours he had used and how many FMLA hours he had remaining [*id.* at 8]. In accordance with company policy, he would call in prior to his shift to request leave and to make sure it was covered by FMLA. [*Id.* at 6.]

Mr. Chastain has been disciplined by IBT on several occasions for attempting to take FMLA leave even though he was ineligible or had exhausted it. [*Id.* at 7.] As a result of his unapproved absences, on March 20, 2007, Mr. Chastain received a "final warning letter" for requesting FMLA leave when "more than likely that there was no more time available." [*Id.* at 8.] IBT did not take any further action at that time. [*Id.*]

In January 2008, Mr. Chastain requested two days of FMLA leave. His request was denied because he had not worked the requisite 1250 hours in the 12 months preceding his request and therefore was not FMLA-eligible. [*Id*. at 7] Despite being told he was ineligible, he did not go to work. [*Id.* at 6-7, 8.] These absences were thus considered unapproved by the company.

[*Id.* at 8.] Accordingly, he received a written warning on January 15. [*Id.* at 8.] But because he had already received a final warning in March 2007, IBT reinstated that final warning, further notifying Mr. Chastain that "any additional chargeable absences before January 8, 2009 would advance him to the next step of the disciplinary process." [*Id.* at 9.] In addition to the written warning, Brande Glass, Mr. Chastain's attendance manager, met with him that day to discuss his unapproved absences. [*Id.*] During the meeting, Mr. Chastain acknowledged that he understood the potential consequences of additional chargeable absences. [*Id.*]

On March 17 and 18, Mr. Chastain again requested FMLA leave for his migraines. Once more, his request was denied because he had not worked the requisite 1250 hours in the previous 12 months. [*Id.*] Ms. Glass advised Mr. Chastain before he missed work that he did not have any FMLA leave time. [*Id.*] Mr. Chastain nonetheless missed work on March 17 and 18—those days were recorded as unapproved absences accordingly. [*Id.*]

Based on the accumulation of unapproved absences, Mr. Chastain was given a three-day suspension in March, 2008 for violation of the Company's attendance policy. [*Id.*] The suspension letter notified Mr. Chastain that any additional chargeable absences before March 19, 2009 would advance him to the next step of the disciplinary process—termination. [*Id.* at 9-10.]

On March 22, 2008, Mr. Chastain again became eligible for FMLA leave. [*Id.* at 10.] That day, he requested and was approved for 32 hours of FMLA leave for the periods of March 22 through March 25 and March 31 through April 2. IBT mailed Chastain notifications concerning his request and his remaining leave time. [*Id.*]

On April 12, Mr. Chastain began an extended period of leave from IBT that lasted until June 28. That period was recorded as FMLA, thus exhausting his 12 weeks of available leave

time (although he was awarded disability benefits concurrently between April 19 and June 11[2]). [*Id.*]

Between April and June, IBT provided Mr. Chastain with F-1 forms notifying him as to the status of his FMLA leave. [*Id.* at 10-11.] Specifically, the F-1 form covering the April 12 through June 29 absences reported that Mr. Chastain had used all 448 hours of his FMLA leave. [*Id.* at 11.] The F-1 further noted that Chastain's FMLA availability for the preceding 12 month period was exhausted as of June 27, 2008. [*Id.*] These F-1 forms were mailed to Mr. Chastain and were accessible to him via IBT's FMLA website. [*Id.*]

On August 30, Mr. Chastain checked the E-Link website, which indicated—inaccurately—that he had 48 additional hours of FMLA time remaining. [*Id.*] The website erroneously failed to reflect six days of pending FMLA time that Mr. Chastain had used but that had not yet been updated on the system due to an administrative backlog. [*Id.* at 12.] Based on what he read on E-Link, Mr. Chastain believed he was eligible for 48 hours of FMLA leave, even though his F-1 forms indicated otherwise. [*Id.* at 11.] According to Mr. Chastain, Connie Berry, an IBT technical associate, confirmed that E-Link showed 48 hours of remaining leave. [Dkt. 39 at 3.] Mr. Chastain claims that, at that time, he would have only had access to accurate attendance records "if he requested them and then physically went to view them at [IBT]'s facility while accompanied by Ms. Glass." [*Id.* at 4.]

Before his shift on the morning of September 3, 2008, Mr. Chastain called into IBT and spoke with William Lester. [Dkt. 34 at 12.] He reported that he was suffering from a migraine and requested FMLA leave. [Dkt. 34 at 11.] Mr. Lester conveyed Mr. Chastain's FMLA request

---

[2] Mr. Chastain's disability application was denied for June 12 through June 29 because he lacked clinical medical information to support his claim. [*Id.* at 11.]

to Ms. Glass, who contacted Mr. Chastain immediately via telephone, before his shift was scheduled to begin. [*Id.*]

Mr. Chastain does not remember anything that happened on September 3 after his initial phone conversation with Mr. Lester. [*Id.*] However, he was told by his live-in partner, Patrick Coan, that Ms. Glass had called and that Mr. Chastain had talked to her. [*Id.* at 14.] Mr. Chastain does not doubt that the conversation occurred as described in Ms. Glass' notes, written immediately after she called him: [*Id.*]

> AJ spoke with William advising FMLA. Called AJ back to advise that he did not have any FMLA hours remaining. AJ said after speaking with Connie and according to E-Link he did. I advised AJ that E-Link is not accurate and would look into it. AJ asked for a vacation day, but advised AJ due to being a holiday week we did not have anything. Since AJ flexed out Tuesday to work NS, offered him time to come in later and make up during the week, but he probably could not make up the whole 8 hour day this week. AJ stated that he did not know what to do and that he had been trying. He tried getting medicine yesterday but no luck. Asked AJ if he wanted us to code as sick today and if he could make it in later he could, if not we would see him tomorrow. Hoped he felt better and would either see him later or tomorrow. AJ said ok.

[Dkt. 40 at 5.]

Mr. Chastain did not go to work on September 3. That afternoon, Mr. Coan contacted Mr. Chastain's doctor twice—first to report that Mr. Chastain was experiencing a "severe migraine," and second to report that his migraine medicine was not working. [Dkt. 34 at 14.] Late in the evening, Mr. Coan drove Mr. Chastain to the emergency room, where Mr. Chastain told the doctor he had been nauseous and vomiting all day. [*Id.*] He was treated with medication, slept, and was released three hours later.

The next morning, September 4, Mr. Chastain contacted IBT and again requested FMLA leave for a migraine. [*Id.*] E-Link still showed that Mr. Chastain had 48 hours of leave remaining. [Dkt. 39 at 3.] Ultimately, he did not go to work that day.

When Ms. Glass learned that Mr. Chastain had failed to report to work on either September 3 or 4, she initiated the process of a final step review and determined that termination was appropriate based on his past disciplinary record. [*Id.* at 16.]

On September 30, IBT informed Chastain that his September 3 and 4 leave requests were denied because he had exhausted his FMLA leave entitlement for 2008. [*Id.*] At that time, he was suspended pending dismissal. [*Id.*] The Union-Management Review Board Meeting held a review meeting on November 12, 2008, after which IBT upheld the decision to terminate Mr. Chastain's employment. [*Id.*] Mr. Chastain grieved the termination decision, but the Union chose not to arbitrate the grievance. [*Id.*]

On September 22, 2009, Chastain filed suit in this Court alleging that IBT terminated his employment in interference with his FMLA rights and under a state-law promissory estoppel theory. [*Id.* at 16-17.]

## II.

### STANDARD OF REVIEW ON MOTION FOR SUMMARY JUDGMENT

A motion for summary judgment asks that the Court find that a trial based on the uncontroverted and admissible evidence would—as a matter of law—conclude in the moving party's favor and is thus unnecessary. *See* Fed. R. Civ. Pro. 56(c). When evaluating a motion for summary judgment, the Court must give the non-moving party the benefit of all reasonable inferences from the evidence submitted and resolve "any doubt as to the existence of a genuine issue for trial...against the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). Nevertheless, "the Court's favor toward the non-moving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Singer v. Raemisch*, 593 F.3d 529, 533 (7th Cir. 2010). The non-moving party must set forth specific facts showing that there is a material issue for trial and cannot rely upon the mere allegations or denials in the pleadings.

Fed. R. Civ. Pro. 56(e); *Celotex*, 477 U.S. at 317. Moreover, the non-moving party must do more than just demonstrate a factual disagreement between the parties; it must demonstrate that the disputed factual issue is "material." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001). The key inquiry is the existence of evidence to support a plaintiff's claims or affirmative defenses, not the weight or credibility of that evidence, both of which are assessments reserved to the trier of fact. *See Schacht v. Wis. Dep't of Corrections*, 175 F.3d 497, 504 (7th Cir. 1999). Therefore, in what follows, the Court makes all reasonable factual inferences in favor of Mr. Chastain. *See* Fed. R. Civ. Pro. 56(c).

## III.

### DISCUSSION

IBT claims that, as a matter of law, Mr. Chastain is not entitled to reinstatement or compensation for his absences under the FMLA, nor can he recover under his alternative state-law promissory estoppel theory.

### A) Mr. Chastain's FMLA Interference Claim

The FMLA provides an eligible employee up to 12 weeks of leave during a 12-month period for certain serious health conditions that render the employee unable to perform the functions of his position. 29 U.S.C. § 2612(a). The FMLA also permits the employee to take leave intermittently or on a reduced schedule when medically necessary. 29 U.S.C. § 2612(b). The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the Act. 29 U.S.C. § 2615(a)(1). Employees who qualify for FMLA rights (those who are "eligible employees") may sue for a violation of § 2615 to recover damages and to seek equitable relief. 29 U.S.C. § 2617(a)(1).

### 1. Relief under the FMLA

To prevail on an FMLA interference claim, Mr. Chastain must show that IBT deprived him of an FMLA entitlement. *Burnett v. LFW, Inc.,* 472 F.3d 471, 477 (7th Cir. 2006). Specifically, a plaintiff "must establish that: (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Id.*

Here, Mr. Chastain alleges that IBT interfered with his FMLA rights by denying his September 3 and 4 FMLA leave requests. [Dkt. 39 at 7.] Specifically, Mr. Chastain argues that IBT interfered with his FMLA rights by misrepresenting—through E-Link and through Ms. Berry's confirmation of E-Link—that Mr. Chastain had 48 hours of FMLA leave on September 3. [*Id.*]

Nonetheless, IBT argues, and Mr. Chastain does not dispute, that he had actually exhausted his FMLA leave on September 3. [Dkt. 34 at 18.] Therefore, he was not an eligible employee, [*id.* at 10-11], and he had no FMLA rights with which to interfere. *Burnett,* 472 F.3d at 477.

### 2. Mr. Chastain's Equitable Estoppel Claim[3]

Mr. Chastain claims that IBT should be equitably estopped from denying his FMLA eligibility on September 3 and 4. [Dkt. 39 at 6.] Because E-Link told him that he had FMLA leave, and because Ms. Berry confirmed that E-Link said the same, he argues that IBT should not be able to argue otherwise here. IBT argues, however, that equitable estoppel is unavailable

---

[3] IBT points out that Mr. Chastain's Complaint, [dkt. 1], does not mention equitable estoppel, [dkt. 34 at 20], which Mr. Chastain raises in his response brief. Indeed, Count II of the complaint is a reliance claim predicated on promissory estoppel, but the Court finds it appropriate to analyze Mr. Chastain's equitable estoppel as a defensive doctrine that could potentially prevent IBT from asserting a statutory defense to Mr. Chastain's FMLA claim. *See Dormeyer v. Comerica Bank-Illinois,* 223 F.3d 579, 582 (7th Cir. 2000).

where Mr. Chastain had exhausted his FMLA leave, and that even if equitable estoppel were available under the FMLA, Mr. Chastain fails to meet his burden of establishing the required elements of the claim.  [Dkt. 34 at 3.]

The Seventh Circuit has not considered directly whether equitable estoppel is available under the FMLA.  It has, however, suggested that the doctrine could be applied "in an appropriate case" to defeat a defense of FMLA ineligibility.[4]  *Dormeyer v. Comerica Bank-Illinois,* 223 F.3d 579, 582 (7th Cir. 2000).  To successfully invoke the doctrine, a plaintiff must show: (1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel."  *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir.1992).

Mr. Chastain argues that because of E-Link (and Ms. Berry's confirmation of what E-link showed), he reasonably believed that he had 48 hours of leave time remaining on September 3. Further, Mr. Chastain argues that he would have come to work had he known that the representations were wrong.  [Dkt. 39 at 8.]  Because "[IBT] instructed its employees o use the E-Link system to verify the amount of covered absences available to them, including FMLA leave," and because IBT's COBC required that records must be "accurate and reliable, no matter what form those records take, Mr. Chastain argues that a jury could find that his reliance on E-Link was reasonable.  [Dkt. 39 at 7.]

The Court, however, finds to the contrary: whether or not he could prove its other elements, he cannot show that he reasonably relied on any misrepresentation as to his FMLA eligibility.

---

[4] IBT argues that the Seventh Circuit has never suggested that estoppel could be invoked by an employee who actually had exhausted his FMLA leave, rather than someone who is declared ineligible by his employer.  Because the Court finds there is no genuine issue on the reliance element of Mr. Chastain's estoppel claim, it will not reach that argument.

Mr. Chastain does not dispute that employees were explicitly instructed to confirm how much leave time they had through a variety of other sources besides E-Link. [Dkt. 34 at 8.] To rely on the E-Link information, Mr. Chastain had to ignore several sources of correct information about his FMLA leave. One such source was the correct F-1 form that Mr. Chastain received, which clearly indicated that he was no longer eligible for FMLA leave. [Dkt. 34 at 25.] Another such source was contacting the attendance manager herself, Ms. Glass, whom Mr. Chastain does not dispute having called before every shift he missed, per IBT's instructions—including September 3 and 4. [*Id.* at 12.] And Ms. Glass rectified the erroneous E-link figure upon which Mr. Chastain says he relied. She – and thus IBT – told Mr. Chastain he had no FMLA leave remaining. Although Mr. Chastain now states he doesn't remember what Ms. Glass said on the phone, he does not dispute that the conversation occurred as she described it. [*Id.* at 24-25.] Mr. Chastain could also have kept track of his own hours. Finally, on September 4th, E-link still showed 48 hours of FMLA leave time. Given that Mr. Chastain had just missed a day's work supposedly covered under FMLA leave, E-link could not possibly be accurate. Given all of this contrary information, having frequently made use of it before, and aware that he faced termination if he was absent without authorization, no reasonable judge or jury could conclude that his reliance on E-link was reasonable.

Mr. Chastain does not present "the appropriate case" in which the Court should plow new ground and invoke equitable estoppel to provide him FMLA benefits after he exhausted his. Here the undisputed evidence shows that the error in the E-link system was corrected by IBT through Ms. Glass. The undisputed evidence also establishes multiple sources of correct information providing Mr. Chastain notice that he had exhausted his FMLA. There would be nothing equitable about imposing liability on IBT for an error it corrected. Because Mr. Chastain cannot

show that his reliance on the E-Link information regarding his FMLA leave was reasonable, he cannot prove an essential element of his equitable estoppel claim. *Kennedy*, 965 F.2d at 417. Without the equitable estoppel claim, Mr. Chastain's FMLA interference claim fails because Mr. Chastain was not eligible for leave at the time he is claiming to have been deprived of it. *Burnett*, 472 F.3d at 477; 29 U.S.C. § 2612(a).

Therefore, the Court grants IBT's motion for summary judgment on Mr. Chastain's FMLA interference claim.

## B) Mr. Chastain's State-Law Promissory Estoppel Claim

Mr. Chastain also argues that his IBT violated the Indiana common law doctrine of promissory estoppel by firing him based on his adherence to IBT's misrepresentation. IBT argues that Mr. Chastain's claim fails because the claim is preempted by federal law, and even if it were not, he cannot establish the elements of a prima facie claim.[5]

### 1. Is Mr. Chastain's Promissory Estoppel Claim Preempted by the CBA?

Section 301 of the Taft-Hartley Act ("LMRA") preempts state causes of action addressing "questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement . . . ." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985). Specifically, "when a state law claim is substantially dependent on an analysis of a collective-bargaining agreement, a plaintiff may not evade the pre-

---

[5] Although the Court ultimately dismisses Mr. Chastain's federal claim, it will retain supplemental jurisdiction over his state-law promissory estoppel claim pursuant to 28 U.S.C. § 1367(c). *Int'l Coll. of Surgeons*, 522 U.S. at 173, 118. Here, given the length of this litigation, the simplicity of the state law claim at issue, and the federal pre-emption defense waged by IBT, the Court finds it appropriate to retain jurisdiction over the state law claims and decide them now. *Hansen v. Board of Trustees of Hamilton Southeastern School Corp.*, 551 F.3d 599, 606 (7th Cir. 2008).

emptive force of § 301 of the LMRA by casting the claim as a state law claim." *Int'l Bhd. Electrical Workers v. Hechler*, 481 U.S. 851, 859 n.3 (1987).

IBT argues that because Mr. Chastain was a union employee subject to a CBA, he is preempted from challenging the underlying reasons for his termination. [Dkt. 34 at 31.] His allegations, IBT argues, "rise and fall with" analysis of the applicable CBA. Specifically, as § 12.03 of the CBA provides, "[t]he Company agrees that it will act with just cause in taking any disciplinary action including dismissal, suspension or demotion of any employee," Mr. Chastain's termination cannot be analyzed without analysis of the CBA. [*Id*. at 33.]

Mr. Chastain argues, however, that neither the E-Link/Ms. Berry's representations about his FMLA eligibility, nor the consequences Chastain suffered as a result of his reliance thereon, implicate the CBA in any way. [Dkt. 39 at 14.] Indeed, Mr. Chastain readily admits that IBT "had every right, both pursuant to the CBA and Indiana common law, to terminate his employment for non-FMLA protected absences." [*Id.*] In his view, this case concerns Mr. Chastain's reliance on IBT's promise, and not the nature of his termination, *per se*, the issue at hand is not governed by, nor is it inextricably linked with, the terms of the CBA. [*Id.*]

The Court agrees that Mr. Chastain's claim is not preempted by the CBA. The instant case is not principally about whether Mr. Chastain's termination was proper under the CBA. Rather, the issue is whether IBT is liable for damages based on its misrepresentation of Mr. Chastain's leave time on E-Link under the promissory estoppel doctrine. Because Mr. Chastain is only challenging his termination insofar as it was predicated on IBT's conduct, the Court can analyze the promissory estoppel claim without turning to the terms of the CBA. *Int'l Bhd. Electrical Workers*, 481 U.S. at 859.

Therefore, the Court finds that Mr. Chastain's promissory estoppel claim is not preempted by the CBA.

### 2. Is Mr. Chastain's Promissory Estoppel Claim Preempted by the FMLA?

The Seventh Circuit has held that a federal statute only preempts a state-law claim where it is clear that Congress intended the federal cause of action to provide the exclusive remedy to the harm and where the federal claim "includes the same ingredients as the state claim and provides some recovery." *Adkins v. Ill. Cent. R.R. Co.*, 326 F.3d 828, 835 (7th Cir.2003). Although the FMLA does not automatically preempt state law claims, *Bellido-Sullivan v. Am. Int'l Group, Inc.*, 123 F.Supp.2d 161, 165 (S.D.N.Y.2000), courts have found that the FMLA preempts state-law claims that consist of the same ingredients as the federal claims, reasoning that § 2617(a) of the FMLA "provides the exclusive remedies for an employer's violation of the FMLA." *Rosania v. Taco Bell of America, Inc.*, No. 3:03 CV 7525, 2004 WL 343515, at *1 (N.D.Ohio Feb.23, 2004).

Here, IBT argues that Mr. Chastain's promissory estoppel claim is preempted by the FMLA because the former is dependent upon a federal right created under the FMLA. [Dkt. 34 at 34.] If FMLA leave is available to Mr. Chastain, IBT contends, it is through and under the FMLA, not a state-law claim. [*Id*. at 35]

The parties do not dispute whether the FMLA provides the exclusive remedy for a violation of FMLA rights. Rather, Mr. Chastain argues that insofar as IBT moves for summary judgment on the FMLA interference claim, it is contradictory for it to maintain that the FMLA provides the exclusive remedy for Mr. Chastain's claims. [Dkt. 39 at 14.] Mr. Chastain contends that if the FMLA applies, his promissory estoppel claim is preempted and should be dismissed, [but if] the FMLA does not apply, [Mr.] Chastain's promissory estoppel claim must be allowed to go forward" because it would be impossible for the FMLA to provide a remedy. [*Id.* at 15.]

Mr. Chastain, however, has styled his promissory estoppel claim as a violation of his FMLA rights: "the promise made by Defendant to Chastain is simple—both Ms. Berry and [IBT]'s E-Link system represented to Chastain that he had FMLA hours available to cover his September 3 and 4, 2008 absences." [Dkt. 39 at 10.] Because he frames his state-law claim as a violation of FMLA rights, and because the FMLA provides the "exclusive remedy" to a violation of such rights, Mr. Chastain's claim is preempted by the FMLA, regardless of the merits of his federal claim. 29 U.S.C. § 2617(a); *Adkins*, 326 F.3d at 835.

Therefore, the Court finds that Mr. Chastain's promissory estoppel claim is preempted by federal law.[6] IBT is entitled to summary judgment on the promissory estoppel claim.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** IBT's motion for summary judgment, [dkt. 33]. Mr. Chastain shall take nothing by way of his complaint. Judgment will enter accordingly.

12/20/2010

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[6] Even if Mr. Chastain's claim were not preempted by federal law, it would fail on its merits. The Court finds that he has not established three essential elements of his promissory estoppel claim: that IBT made a promise, that IBT expected Mr. Chastain would rely on the promise, or that he reasonably relied thereon. *Meisenhelder v. Zipp Exp., Inc*., 788 N.E.2d 924, 932 (Ind. Ct. App. 2003). In order to overcome a motion for summary judgment, Mr. Chastain must present evidence to show that he can establish all five elements of his promissory estoppel claim. *Celotex*, 477 U.S. at 323 (holding that Rule 56(c) requires summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Even if Mr. Chastain were to raise a genuine issue of material fact regarding two of the five of the elements of a promissory estoppel claim, his inability to put forth evidence to establish either that there was a promise, that IBT expected him to rely on it, or that his reliance was reasonable is fatal to his claim. *Celotex*, 477 U.S. at 323.

**Distribution via ECF only:**

Brett Edward Buhl
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brett.buhl@odnss.com

Philip J. Gibbons Jr.
GIBBONS JONES, P.C.
pgibbons@gibbonsjones.com

Andrew G. Jones
GIBBONS JONES P.C.
ajones@gibbonsjones.com

Brian L. McDermott
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
brian.mcdermott@odnss.com